STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-1140

STATE OF LOUISIANA

VERSUS

COURTNEY PAUL SAVOY

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 288,660
HONORABLE THOMAS MARTIN YEAGER, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and John D. Saunders, Judges.

SAUNDERS, J., agrees in part, dissents in part and assigns written reasons.

SENTENCE VACATED.    REMANDED
FOR RE-SENTENCING.

James C. Downs
District Attorney - 9th Judicial District Court
Willard Trichel Armitage, Jr.
Assistant District Attorney - 9th Judicial District Court
P. O. Drawer 1472
Alexandria, LA 71309
Telephone:  (318) 4473-6650
COUNSEL FOR:
        Plaintiff/Appellee - State of Louisiana

Edward Kelly Bauman
Louisiana Appellate Project
P. O. Box 1641
Lake Charles, LA 70602-1641
Telephone:  (337) 491-0570
COUNSEL FOR:
        Defendant/Appellant - Courtney Paul Savoy

**Courtney Paul Savoy**
**David Wade Correctional Center**
**670 Bell Hill Road**
**Homer, LA 71040**

**THIBODEAUX, Chief Judge.**

Courtney Paul Savoy was convicted of simple escape, in violation of La.R.S. 14:110, and sentenced to five years at hard labor, to run consecutively to an earlier sentence. The conviction arose out of Savoy's actions as a principal in the escape of another inmate, Jacob Shaw. This conviction comes after this court vacated Savoy's first conviction on the same charge and remanded the matter. *See State v. Savoy*, 08-1444 (La.App. 3 Cir. 6/3/09), 11 So.3d 1184.

The trial court also found Savoy to be a third felony offender and sentenced Savoy to ten years at hard labor, the longest term possible. The sentence is to run consecutively to Savoy's other sentences. Savoy now appeals his conviction and sentence.

## I.

## ISSUES

We shall consider whether:

(1)    there was sufficient evidence to convict Savoy of being a principal in escape of another where the witnesses gave conflicting testimony regarding Savoy's participation in the escape;

(2)    Savoy's maximum sentences were excessive, i.e., whether Savoy is the worst offender where Savoy participated in planning of the escape but did not escape;

(3)    the trial court's denial of Savoy's motion to suppress statements he and Shaw allegedly gave under duress was a harmless error;

(4)    Savoy's second trial placed Savoy in jeopardy the second time where this court vacated, at Savoy's request, his first conviction;

(5)    the trial judge should have been recused from Savoy's trial because he allegedly coerced the co-defendant's testimony where the trial judge

explained the potential of perjury prosecution if the co-defendant were to change his previous testimony;

(6) Savoy had full use of his peremptory challenges where the trial court, pursuant to the local rule, had a system of simultaneous exercise of peremptory challenges and where Savoy and the State eliminated the same juror;

(7) the trial court erred by disallowing Savoy to speak to his witness where the trial court allowed Savoy's counselor to communicate with the witness;

(8) the trial court's allowance of hearsay evidence in the form of a letter was a harmless error;

(9) the trial court erred by disallowing Savoy to call his previous attorneys as witnesses where Savoy stated he did not want his previous attorneys to testify;

(10) the trial court erroneously excluded Savoy's testimony based on hearsay objection where Savoy was asked to repeat a statement made by another person when that person was available and did, in fact, testify;

(11) the trial court erred by allowing allegedly previously-suppressed testimony where the trial court did not, in fact, suppress that testimony;

(12) Savoy was selectively prosecuted as a multiple offender where his co-defendant was not so prosecuted;

(13) this court should consider the ineffective assistance of counsel issue where the record does not disclose sufficient evidence to rule on the issue; and,

(14) the State committed a discovery violation by using Savoy's medical records where Savoy failed to make any objection to their use.

II.

**FACTS**

In January of 2007, Savoy and Shaw, both inmates at the Winn Correctional Center (Winn), were transported in a van by two prison guards, Parker

2

and Morgan, to a hospital. Both inmates had been put in wrist cuffs, leg irons, and waist chains. When the van arrived at the hospital, Morgan opened the door of the van and reached for Shaw's waist chain. The chain was not in place, and she saw it in Shaw's hand. At that point, Shaw ran.

Parker fired a total of four shots and pursued him. Shaw disappeared into the woods. Parker returned to the van ten to fifteen minutes later. Savoy was locked inside the van wearing his leg and hand shackles and waist chain. After his Saturday escape, Shaw was captured on Monday. Parker never saw Savoy without his restraints.

After Shaw was captured, he told Lieutenant Bo Edmonds how he had slipped his belt off, undone one leg iron, and run away. In the second interview, after Shaw had returned to Winn, Shaw said Savoy helped him plan the escape.

Edmonds interviewed Savoy as a witness at the hospital right after Shaw's escape. After Shaw's second interview which implicated Savoy, Edmonds contacted the warden and requested a second interview with Savoy, this time as a suspect. Lieutenant Edmonds arrested Savoy for assisting in the escape after this interview.

Savoy's counsel pointed out at trial that both Shaw and Savoy gave two statements, and the second statement of both took place after each had been returned to Winn. Both men's testimony changed in their second statements. Lieutenant Edmonds did not recall whether he asked either man why he changed his statement.

Warden Wilkinson and Bobby Tolar, a corrections officer, were present during Shaw's second statement. Shaw never indicated he would receive additional punishment or that the warden threatened him, and Lieutenant Edmonds saw nothing in the demeanor of the warden or Officer Tolar that would have indicated any sort of intimidation.

3

Both the State and Savoy called Shaw as a witness at trial. Shaw met Savoy at Winn in 2006 and began to talk of escape. Shaw testified Savoy "came up with this plan that we go to the gym, drink a bottle of salt water, bang our heads against the wall until we get a knot on it, and then at the end of gym call, we're gonna fake a fall down some steps, and then from there go to the infirmary." When they carried out that plan, a doctor recommended they go to the hospital. On the way, Savoy picked his own and Shaw's leg irons with a bobby pin Shaw found in the gym. According to Shaw, they planned to "bum rush the guard and get his gun, an' put them in the van and handcuff them and shackle them, and then drive off."

After Shaw was captured, he made a plea bargain for a two-year consecutive sentence. His plea agreement did not involve any special favors or an agreement to testify at Savoy's trial. Shaw testified he was not threatened or intimidated when he gave the statement implicating Savoy. He further stated he lied when he said during the first interview that Savoy had nothing to do with the escape.

After Shaw was arrested after the escape and returned to Winn, he wrote a letter to Savoy and asked "why he played [Shaw] like a fool" and did not follow through with the escape. Shaw wrote the letter out of "curiosity and anger" and was not forced to write it.

About his transfer to the Allen Parish correctional facility after the escape, Shaw testified he requested to be sent to a facility unknown to Savoy. That was because the word got out around that Shaw was a "rat."

Shaw was placed in the same holding cell with Savoy, Quindell Addison, and Travis Richardson during Savoy's first trial. Shaw testified he was never intimidated by the warden, despite telling Savoy, Addison, and Richardson "the warden's kinda pushing me right now" when he was in the cell with them.

Richardson verified that Shaw felt he was in danger from the warden if he did not say Savoy had helped him. While Shaw, Addison, and Richardson were in the holding cell at the earlier trial and also while Shaw and Richardson were at Winn, Shaw told Richardson that Savoy did not pick his shackles. Shaw also told Richardson he gave false statements against Savoy, and Richardson believed Shaw had no reason to lie to him.

Addison testified he shared a cell with Shaw at Winn right after the escape. Defense counsel asked Addison if Shaw ever told him Savoy had nothing to do with the escape. Addison replied, "Yes sir. He told me he had nuthin' to do with the escape" while they were in the cell together. Addison later testified, however, that Shaw said the plan was for Savoy to escape with him.

Addison further testified that Shaw admitted to giving false statements against Savoy in the presence of two attorneys, Richardson, and, possibly, Savoy. Shaw felt he made a mistake because if he testified with the defense, the warden would punish him, and if he testified with the prosecutors, Savoy would be punished. According to Addison, the warden threatened Shaw with an extended lock-down if he did not testify Savoy was the mastermind of the plan.

Addison and Savoy also knew each other from the Winnfield and David Wade facilities. According to Addison, Savoy told him he was supposed to go with Shaw on the night of the escape and that he was part of the escape.

Savoy testified at his trial. He denied planning the escape, assisting Shaw in the escape, or attempting to escape himself. Savoy testified he and Shaw were taken to the hospital after they fell on the stairs in the gym at the correctional center. Probably within an hour of the escape, Savoy gave his first statement to Lieutenant Edmonds. The next morning, the assistant warden questioned him, and he told her the same story. One or two days later, Savoy talked to the chief of

security, along with the assistant warden, and told them the same thing. He next spoke to the assistant warden and Warden Wilkinson and told them the same thing.

Savoy's second statement, given after Shaw was apprehended and after Shaw's second interview, was totally contradictory to these previous conversations. Savoy explained that the warden threatened him with an extended lock-down for as long as he was the warden. According to Savoy, the assistant warden read off a list of things Savoy needed to say.

Officer Tolar and the warden transported Savoy to the Pineville Police Department, and "on the way there he [the warden] went back over everything." By the time recording of the statement began, Savoy agreed to say what the warden told him to say. He admitted that he denied, both at the beginning and at the end of that statement, that any threats or promises had been made or that any coercion had been used to get him to make the statement. Savoy explained that denial by the warden's presence in the room and his threatening looks.

Officer Tolar testified about Savoy's transport from Winn to the Pineville Police Department prior to the second statement. He heard no conversation about following a story, and he heard no threats. He did hear a conversation between the warden and Savoy about what happened. The warden would ask a question, and Savoy would voluntarily talk. Tolar denied that he, the warden, or Edmonds forced, threatened, or coerced Savoy into giving his second statement.

Warden Wilkinson testified Savoy was placed in pre-hearing detention, an isolated lock-up, when he was returned to Winn from the hospital on the night of the escape. He denied telling Savoy that he would either keep Savoy on extended lock-down or transfer him to another facility. Savoy was transferred at the warden's request because of inmate safety issues.

Shaw's second statement came about because, according to the warden, he did not want to "take the fall" by himself. Shaw made a written statement saying Savoy had set him up, was supposed to go with him, helped him get out of the restraints, and helped him come up with a plan.

The warden was present during Savoy's second statement. The warden denied that he or the assistant warden told Savoy what he was supposed to say. The atmosphere during the ride from Winn to the police station and during the statement was casual, without threats or duress.

III.

## LAW AND DISCUSSION

### *(1) Sufficiency of Evidence*

Savoy argues the evidence was insufficient to convict him of being a principal to simple escape. In his pro se brief, Savoy further argues the State failed to prove an essential element of simple escape; because the State did not prove human life was not endangered, he should be acquitted.

The standard of review in a sufficiency of the evidence claim is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged." *State v. Leger*, 05-11, p. 91 (La. 7/10/06), 936 So.2d 108, 170, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279 (2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State v. Captville*, 448 So.2d 676 (La.1984)). The *Jackson* standard of review is now in La.Code Crim.P. art. 821. It does not allow the appellate court "to substitute its own appreciation of the evidence for that of the fact-finder." *State v. Pigford*, 05-477, p. 6 (La. 2/22/06), 922 So.2d 517, 521; *See also State v. Robertson*, 96-1048 (La. 10/4/96), 680 So.2d 1165.

7

The appellate court's function is not to assess the credibility of witnesses or re-weigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So.2d 442.

The factfinder's role is to weigh the credibility of witnesses. *State v. Ryan*, 07-504 (La.App. 3 Cir. 11/7/07), 969 So.2d 1268. Thus, "the appellate court should not second-guess the credibility determination of the trier of fact." *Id.* at 1270 (quoting *State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27); *see also State v. Turner*, 04-1250 (La.App. 3 Cir. 3/2/05), 896 So.2d 286, *writ denied*, 05-871 (La. 12/12/05), 917 So.2d 1084. "[A]n appellate court may impinge on the fact finder's discretion and its role in determining the credibility of witnesses 'only to the extent necessary to guarantee the fundamental due process of law.'" *State v. Strother*, 09-2357, pp. 10-11 (La. 10/22/10), 49 So.3d 372, 378 (quoting *State v. Mussall,* 523 So.2d 1305, 1310 (La.1988)).

Simple escape is:

> [t]he intentional departure, under circumstances wherein human life is not endangered, of a person imprisoned, committed, or detained from a place where such person is legally confined, from a designated area of a place where such person is legally confined, or from the lawful custody of any law enforcement officer or officer of the Department of Public Safety and Corrections.

La.R.S. 14:110. "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." La.R.S. 14:24.

At trial, Shaw testified he and Savoy formed an escape plan. He said he lied when he first said Savoy was not involved in his escape. He endangered himself by becoming "a rat," and he told Addison and Richardson he would not testify against Savoy in order to protect himself. Shaw said he was never intimidated by the warden.

Addison and Richardson, on the other hand, stated that Shaw felt threatened by the warden and had given false statements against Savoy. Addison testified the warden told Shaw what to say and threatened him with extended lock-down if he refused to say it. Yet, Addison also testified Savoy told him he was part of the escape.

Savoy further complains the State did not prove an element of simple escape, specifically, that human life was not endangered. The State did put on evidence that Parker fired four shots at Shaw. This does not, however, indicate the State's failure to prove an element of simple escape. Rather, it shows the possibility that Savoy could have been charged as a principal to an aggravated escape, a more serious offense. Thus, this argument has no merit.

This trial involved testimony from several witnesses who contradicted themselves at one point or another. Nevertheless, the jury could have reasonably found, based on its credibility determinations, that Savoy aided and abetted in Shaw's escape or directly or indirectly counseled with him to commit simple escape. Thus, the evidence at trial, accepting the jury's credibility determinations, was sufficient to convict Savoy.

*(2) Excessive Sentence*

Savoy argues his initial maximum sentence of five years at hard labor for simple escape and his subsequent maximum sentence of ten years at hard labor as a third felony offender are constitutionally excessive. Savoy argues that he is not the worst offender and, therefore, should not receive the maximum sentence. In his pro se brief, Savoy argues he was erroneously given a harsher sentence on retrial (five and ten years) without the trial court's showing of justification for a more severe sentence than was imposed at the first trial (five years).

"No law shall subject any person . . . to cruel, excessive, or unusual punishment." La.Const. art. 1, § 20.

> To constitute an excessive sentence, this Court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no reasonable contribution to acceptable penal goals and[,] therefore, is nothing more than the needless imposition of pain and suffering. The trial judge has broad discretion, and a reviewing court may not set sentences aside absent a manifest abuse of discretion.

*State v. Guzman,* 99-1528, p. 15 (La. 5/16/00), 769 So.2d 1158, 1167 (citations omitted). The following factors help to decide whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals: "the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment[,] and a comparison of the sentences imposed for similar crimes." *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061 (citing *State v. Smith*, 99-606, 99-2015, 99-2019, 99-2094 (La. 7/6/00), 766 So.2d 501).

Although a comparison of sentences imposed for similar crimes can be helpful, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *Id.* (quoting *State v. Batiste*, 594 So.2d 1, 3 (La.App. 1 Cir. 1991)). Because the trial court is in the best position to evaluate the aggravating and mitigating factors of a particular case, "it is within the purview of the trial court to particularize the sentence." *Id.* Finally, "[a]s a general rule, maximum sentences are appropriate in cases involving the most serious violation of the offense and the worst type of offender." *State v. Hall*, 35,151, p. 4 (La.App. 2 Cir. 9/26/01), 796 So.2d 164, 169 (citing *State v. Grissom*, 29,718 (La.App. 2 Cir. 8/20/97), 700 So.2d 541; *State v. Walker*, 573 So.2d 631 (La.App. 2 Cir. 1991)).

The statutory sentence for simple escape by a person already imprisoned is additional imprisonment with or without hard labor for two to five years; the sentence "shall not run concurrently with any other sentence." La.R.S. 14:110(B)(3). The sentence of a third felony offender who has not been convicted of a crime of violence or a sex offense may be enhanced by a sentence of imprisonment "not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction." La.R.S. 15:529.1(A)(1)(b)(I). Thus, Savoy could have been sentenced as a third felony offender for a term ranging from forty months to ten years.

The following jurisprudence guides our reasoning. In *State v. Williams*, 538 So.2d 743 (La.App. 3 Cir.), *writ denied*, 544 So.2d 397 (La.1989), the trial court found the defendant was unlikely to be a favorable probationary risk, that the probability of recidivism was high, and that she represented a threat to society. The court also noted the defendant's history of violent and criminal behavior and affirmed her three-year sentence for simple escape.

In *State v. Townley*, 94-1002 (La.App. 3 Cir. 5/3/95), 657 So.2d 129, *writ denied,* 95-2371 (La. 1/26/96), 666 So.2d 669, the defendant was convicted of simple escape and then adjudicated a third felony offender. He was sentenced to five years at hard labor. His possible sentence was two-and-a-half to ten years.

The defendant in *State v. Texada*, 98-1647 (La.App. 3 Cir. 5/5/99), 734 So.2d 854, was one of three inmates who overtook unarmed jail guards. Two inmates threatened and hit the guards with metal rods while the defendant searched for keys to the cells. The trio locked the guards in a cell, where they remained for more than three hours, and escaped. After his capture, approximately two months later, the defendant was convicted of aggravated battery and aggravated escape. Treated as a

first offender because he had no prior felony convictions, the defendant received the maximum sentence for aggravated escape, ten years.

When Savoy was sentenced for the simple escape, the trial judge imposed the maximum five-year sentence based on the reasons the judge articulated during Savoy's previous trial. At that time, the court found an undue risk that Savoy would commit another crime during the period of suspended sentence or probation. Further, Savoy was in need of correctional treatment or a custodial environment that would be most effectively provided by commitment to an institution. The judge noted Savoy had been convicted of thirteen prior felony offenses and was serving more than twenty years of imprisonment.

The trial judge also found a lesser sentence would deprecate the seriousness of Savoy's crime. The trial judge considered Savoy's failure to tell the truth at trial to be an aggravating factor. Evidence at the habitual offender hearing showed that none of Savoy's convictions involved crimes of violence.

This court concludes that one of the *Smith* factors does not support the trial court's finding. Savoy was convicted as a principal to simple escape; he did not escape himself, but he aided someone else's escape. Shaw, whose escape Savoy aided, was serving a twenty-year sentence for forcible rape at the time of his escape. He pled guilty to simple escape and received two years as his sentence. Thus, as one who was imprisoned for the commission of a crime of violence, a sex offense, Shaw received the minimum sentence for his completed escape, while Savoy received the maximum sentence for his role as a principal, enhanced to the maximum extent by the third offender adjudication.

This court finds Savoy is not a "worst offender" on whom a maximum sentence should be imposed. Further, the jurisprudence shows that the maximum sentence is, indeed, reserved for more egregious offenders than Savoy and that his

12

offense warrants a shorter sentence. Thus, this court vacates his sentence and remands the matter for re-sentencing.

### (3) Motion to Suppress

Savoy filed a motion to suppress the statement he gave to Lieutenant Edmonds at the Pineville Police Department and the statements Shaw gave implicating him. Savoy maintains these statements were made involuntarily and under duress.

This court finds that the evidence at trial, independent of the testimony sought to be suppressed, was sufficient to convict Savoy. Shaw's testimony alone, if believed by the jury, would have been sufficient to support Savoy's conviction. The jury unanimously found Savoy guilty; it obviously accepted Shaw's testimony and rejected the testimony suggesting he testified under duress or threats. Even if Savoy's motion to suppress had been granted and Lieutenant Edmonds would not have been allowed to testify about the statements Savoy and Shaw gave, the evidence would still have been sufficient. Thus, the trial court's error in denying the motion to suppress was, if any at all, harmless.

Savoy further argues Rule 30(v) of the "Disciplinary Rules and Procedures for Offenders" promulgated by the Louisiana Department of Public Safety and Corrections "accomplish[ed] the threat made by Warden Wilkinson" to subject Savoy to indefinite lock-down if he did not say what the warden wanted him to say. The warden indicated at trial that an inmate could receive punishment for failure to cooperate with an investigation, and he referred to a "catchall" provision of Rule 30. Nevertheless, the rules were not admitted into evidence. Thus, this court may not consider the rule book attached to both defense counsel's brief and Savoy's pro se

brief. *See* Uniform Rules—Courts of Appeal, Rule 1-3; *Harris v. Aetna Ins. Co.*, 509 So.2d 486 (La.App. 3 Cir. 1987). Therefore, this argument is without merit.

### (4) Double Jeopardy

Savoy argues he was unconstitutionally subjected to double jeopardy because, had this court ruled on his assignment of error in his previous appeal concerning insufficient evidence for conviction, the ruling would have barred a retrial. This court vacated Savoy's conviction and granted him a new trial because of the finding that he was prejudiced when the trial court erroneously disallowed the testimony of Addison and Richardson. *Savoy*, 11 So.3d 1184.

Louisiana Constitution Article 1, § 15 states: "[n]o person shall be twice placed in jeopardy for the same offense, except on his application for a new trial, when a mistrial is declared, or when a motion in arrest of judgment is sustained." This language negates Savoy's argument.

### (5) Recusal

Savoy contends Judge Yeager should have been recused from presiding over his new trial because of his bias. Savoy argues Judge Yeager showed his prejudice by coercing Shaw into testifying against him at the first trial. Additionally, Savoy claims the judge's bias prevented his attorney from effectively performing his defense.

A judge in a criminal case must be recused when he "[i]s biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial." La.Code Crim.P. art. 671(A)(1). "[A] trial judge is presumed to be impartial. . . . Accordingly, for an accused to be entitled to the recusation on the grounds of bias, prejudice, and personal interest, such bias, prejudice and personal interest must be of a substantial nature based on more than

14

mere conclusory allegations." *State v. Mayeux*, 06-944, p. 22 (La.App. 3 Cir. 1/10/07), 949 So.2d 520, 534-35 (citations omitted). After a hearing, the trial judge appointed to hear the motion found no bias or prejudice.

When Shaw testified at the first trial, Judge Yeager advised him:

I've had your lawyer talk to you yesterday because there's different things that are going here. Ah, as you recall, you, you gave a statement to the police saying that [Savoy] was involved as a principal, and was involved in, ah, your escape. And I've been told that, ah . . . I've been told different things. Number one, that you were gonna testify and say that; number two, that you were not gonna testify, and ah, you were gonna have the Judge hold you in contempt; and number three, I've been told that you were going to testify saying that, ah, [Savoy] had nothing to do with your escape. If you testify saying that he did interfere [sic] with your escape, ah, then that's okay. If you don't wanta testify, that's okay, too, and ah, I'mma order that you testify. And I'mma sentence you to contempt if you don't. If you testify saying that he didn't have anything to do, that's gonna be contradictory to your prior statement, and the State could prosecute you for por [sic], perjury, sir. So, I don't know exactly what you want do [sic]. I know your lawyer Ms. Tiffany Sanders discussed it with you yesterday, and it dun't matter to me. I just can't talk to you about that in the presence of the Jury, because there would be an adverse presumption that, ah, because, ah, you don't wanta testify that it would be unfavorable to the Defendant, and I don't want there to be an unfavorable inference in the presence of the Jury, sir. Tell me what it is you would like to do, sir.

BY MR. SHAW: I'm here to tell the truth.

BY THE COURT: All right. All right, sir. That's fine then. You understand that if you, if, ah, Mr. Davenport who represents the Defendant asks you questions and you testify, you have to tell the truth. [The State's attorney] will be allowed to ask you questions on cross-examination and you have to answer his questions. You can't pick and choose what answers [sic] you want to answer, you understand?

When Shaw had asked if his attorney was going to appear, the trial judge indicated his understanding was that Shaw had already spoken with her, and she did not need to appear. The trial judge further explained to Shaw:

[Y]ou've given two inconsistent statements and there, so there's possibly, ah, some perjury that could, could arise if you don't testify truthfully today. You understand?

BY MR. SHAW: So you're saying that either way I go, if I tell the truth or if I don't want tell anything . . . either way I go, I'm gonna get perjury?

BY THE COURT: No, if you don't want do anything, you get, ah . . . I'mma order that you testify and sentence you to serve six months on top of what you're doing. Six months consecutive. If you come to court today and you tell the truth, based upon, based upon what really happened on January the 20th of 2007, you don't have to worry about perjury. If you don't tell the truth, you do have to worry about perjury.

. . . .

The different options that we have is that you can come to court today and you can testify. That is your right. You have a right to testify if you wish. The Defendant has called you to testify, and so, ah, he's going to ask you some questions about what happened on January the 20th. If you testify truthfully about what happened on January the 20th, 2007, then you don't have anything to worry about, sir. Okay?

BY MR. SHAW: Okay.

BY THE COURT: If you don't testify about what happened truthfully, then you can be prosecuted for perjury, because you're under oath now. And while you're under oath, it's important that you tell the truth.

BY MR. SHAW: So according to my first statement and my second statement, regardless of which one is true—which the second statement is the truth—if you tell you [sic] exactly what was on the second statement, then you'll get me for perjury for what was on the first statement, (interrupted)

BY THE COURT: No.

BY MR. SHAW: . . . am I correct?

BY THE COURT: No. If the second statement is what you say is the truth, and you, you were not under oath when you testified on . . . in the statements, and if you come to court and you testify and say, what I said in my second

statement is, is the truth, and if that is what the truth is, then you're not gonna be prosecuted for perjury, sir.

BY MR. SHAW: Okay. Let's go.

This exchange indicates that Judge Yeager was not telling Shaw how to testify or was threatening him with perjury. Rather, Shaw had questions about the possibility of prosecution for perjury, and he said his second statement was the truth. Judge Yeager simply referred to the second statement as the truth as an example.

Based on the considerations above, Savoy has not shown bias or prejudice of a substantial nature on the part of Judge Yeager, and, thus, the trial court did not err in denying Savoy's motion to recuse.

### (6) Peremptory Challenges

Savoy contends he did not have a full use of his peremptory challenges during jury selection, and, therefore, his rights to a fair trial and due process were violated.

While the Louisiana Constitution grants a defendant the right to peremptory challenges, it does not guarantee him a certain number of strikes. *State v. Lockhart*, 629 So.2d 1195 (La.App. 1 Cir. 1993), *writ denied*, 94-50 (La. 4/7/94), 635 So.2d 1132. A defendant has six peremptory challenges by statute. La.Code Crim.P. art. 799. A district court may either tender a prospective juror to the State and then tender State-accepted jurors to the defendant, or it may "by local rule provide for a system of simultaneous exercise of challenges." La.Code Crim.P. art. 788(B).

Here, the trial judge provided a form to both Savoy and to the State and asked each party to indicate its peremptory challenges. Savoy and the State both excluded Juror No. 104. Savoy argues his challenge was unnecessary because the State also struck the juror. Thus, his challenge could have been used to strike another

17

unacceptable juror. He claims this error denied his rights to a fair trial and due process.

At the hearing on Savoy's motion for judgment of acquittal and/or new trial, the trial judge indicated that the court allows for the simultaneous exercise of challenges. As the trial court explained, "if the State turns in a sheet, and the Defendant turns in a sheet, and there's six persons that can be picked on the jury, then the first six are that jury." That is exactly what happened at Savoy's trial. Therefore, this argument has no merit.

### (7) Communication With Witnesses

Savoy complains that he was not allowed to speak to his own witness, Addison, prior to Addison's testimony. Only Savoy's counsel was allowed to speak to Addison. Savoy contends this limitation violated his right to a fair trial, prevented him from assisting in his own defense, and resulted in Addison's giving of damaging testimony against him.

When the issue arose at trial, the trial judge stated he would allow the defense counsel and not Savoy to speak with the witness. The counsel stated he already spoke with Addison. When questioned whether he thought his client should be able to speak with Addison, the counsel abandoned his objection by his agreement that the ruling was "fair enough." Thus, Savoy may not now raise the issue on appeal. La.Code Crim.P. art. 841.

Even if the counsel maintained his objection, the trial court may exclude witnesses from the courtroom and prevent them "from discussing the facts of the case with anyone other than counsel in the case." La.Code Evid. art. 615(A). The trial judge properly enforced La.Code Evid. art. 615(A) by limiting Addison's contact with Savoy.

18

## *(8) Hearsay Evidence*

Savoy argues the trial court erred by allowing hearsay evidence in the form of a letter Shaw wrote to him after the escape. In the letter, Shaw referred to the plans they made regarding the escape.

Even if the trial court committed an error by allowing the letter into evidence, the error was harmless. The jury could have reasonably convicted Savoy on the grounds previously discussed. The letter only reinforced the other testimony that Shaw gave—that Savoy had helped him plan the escape and had planned to join him in it.

Savoy argues any error regarding the introduction of the letter into evidence was not harmless because the jury in the first trial rendered a guilty verdict only after requesting and receiving a copy of the letter. While Savoy's contention may support the argument that admitting the letter in the first trial was not a harmless error, it has no bearing on the trial proceedings that are the subject of this appeal.

## *(9) Calling Previous Attorneys as Witnesses*

Savoy argues he is entitled to a new trial because he was not allowed to call Thomas Davenport and Jonathan Goins as witnesses without waiving his attorney/client privilege. Because he could not call these witnesses, he contends Shaw's perjury was allowed to go unchallenged.

Davenport and Goins represented Savoy at the first trial. The possibility of them testifying at this trial brought on a lengthy exchange about attorney/client privilege and the attorneys' ethical responsibilities to Savoy. During the discussion, outside the presence of the jury, Savoy's counsel said he wanted to ask Davenport about a question he asked Shaw at the earlier trial: "Did you not say yesterday in the presence of myself, Associate Goins and [Savoy] that you did not wanta [sic] testify

inconsistent [sic] with your second statement to Detective Edmonds because you were afraid to go back to Winn Facility?"

The trial court allowed Savoy and his attorney to speak to Davenport in chambers. The trial court placed Savoy under oath, and he testified that he wished to waive his attorney/client privilege for the purpose of having Davenport speak to his trial counsel. Savoy then commented, "we could just skip all this, 'cause it seems like it's gonna be a whole lotta [sic], a whole lotta [sic], a whole lotta [sic] stuff, when we already have two witnesses that have testified that they heard the same exact comment.'" The trial judge then asked Savoy, "[s]o you don't want Mr. Davenport to testify at your trial now?" Savoy answered, "No sir." The State's attorney asked whether the decision applied to Goins as well, and Savoy replied, "Yes sir." The trial judge then verified that the decision was that of Savoy, and not of his attorney. Savoy's decision prohibits him from now raising this issue on appeal. *See* La.Code Crim.P. art. 841.

### *(10) Challenge to Credibility*

Savoy argues the trial court erroneously sustained an objection by the State on the grounds of hearsay and, thereby, denied his right to testify on his own behalf. He contends testimony given for impeachment purposes is not hearsay, and the trial court's ruling on the objection limited his ability to attack his co-defendant's credibility.

"Hearsay is not admissible except as otherwise provided by this Code or other legislation." La.Code Evid. art. 802. "'Hearsay' is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La.Code Evid. art. 801(C).

"Extrinsic evidence . . . is admissible to attack the credibility of the witness." La.Code Evid. art. 607(D)(1). Extrinsic evidence, including the "evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness" unless the trial court performs a balancing test and the undue consumption of time, confusion of the issues, or unfair prejudice substantially outweigh the probative value of the evidence on the credibility issue. La.Code Evid. art. 607(D)(2).

The exchange between Savoy and his attorney at trial began with his attorney's question:

Q. Do you, do you have a . . . why do you believe [Shaw] would implicate you?

A. I can tell you what he told me.

Q. What did he tell you?

BY [STATE'S ATTORNEY]: Hearsay.

BY THE COURT: Sustained.

The response Savoy wanted to give was offered for the purpose of proving the matter asserted. Further, he was asked to repeat a statement made by someone else, Shaw, who was available to and did, in fact, testify. Nevertheless, this line of questioning should have been allowed to contradict Shaw's testimony for the limited purpose of attacking Shaw's credibility. Thus, the trial court committed an error by excluding this evidence without performing the balancing test as directed by La.Code Evid. art. 607(D)(2). Nevertheless, as previously discussed, the strength of the prosecution's other evidence makes the error harmless.

### (11) Previously-Suppressed Testimony

Savoy complains the testimony that had been suppressed prior to his first trial was erroneously allowed in this trial. Specifically, he complains about the

21

testimony of Officer Tolar and Warden Wilkinson. The trial court suppressed the statements Savoy gave to the warden on January 24 and 25 of 2007 because the warden questioned Savoy at Winn (custodial interrogation) about Savoy's involvement in criminal activity without giving him *Miranda* warnings. Savoy now asserts that his statements to the warden during the trip in the van to Pineville Police Department on January 29, 2007, should not have been allowed.

As the trial court correctly observed, Savoy's statements in the van were not part of the suppressed testimony. Furthermore, while Savoy's counsel asked whether the testimony had been addressed in a motion to suppress during questioning of Officer Tolar, he did not object to its admission into evidence, particularly after the testimony was identified. Thus, Savoy may not raise the issue for the first time on appeal. *See* La.Code Crim.P. art. 841.

Defense counsel objected to the warden's testimony because, according to counsel, it was previously decided on a Motion to Suppress. The trial court overruled the objection. The warden's testimony, like Tolar's, was dealing with what was said during the ride from Winn to Pineville and during the statement taken at the Pineville Police Department. That testimony was not suppressed by the prior ruling. Thus, this assignment of error is without merit.

### *(12) Selective Prosecution*

Savoy contends he was vindictively and selectively prosecuted when the State filed a habitual offender charge against him after the first trial, especially when Shaw was not charged as a multiple offender after his escape.

Anyone who has been convicted of a felony "shall be punished" as a multiple offender when he commits a subsequent felony in Louisiana. La.R.S. 15:529.1. The State proved a long list of Savoy's prior felony convictions at his

22

multiple offender hearing. Thus, it was justified by statute in charging Savoy. What the State did or did not decide with regard to Shaw is immaterial to its legal prosecution of Savoy as a habitual offender.

### (13) Ineffective Assistance of Counsel

Savoy argues his counsel was ineffective "for not objecting to and preserving for appellate review any issues appellant has already [sic] raised in this appeal or any issues appellant could not raise in this appeal due to issues not being preserved for review." Yet, he fails to identify any such issues.

The issue of ineffective counsel is more appropriately addressed in an application for post-conviction relief where an evidentiary hearing can be conducted at the trial court. *State in the Interest of A.B.*, 09-870 (La.App. 3 Cir. 12/9/09), 25 So.3d 1012. Where an ineffective assistance claim is raised on appeal, this court may address the merits of the claim if the record discloses sufficient evidence to rule on it. *Id.*

This record does not contain sufficient evidence to determine whether counsel was ineffective, and Savoy provides no instances of the ineffectiveness. Thus, this issue is appropriately relegated to post-conviction relief.

### (14) Medical Records

Savoy complains the State committed an open file discovery violation by using his protected medical reports. Savoy was questioned about these records at trial, and he failed to make any objection to their use. Savoy may not raise this issue for the first time on appeal. *See* La.Code Crim.P. art 841.

23

IV.

**<u>CONCLUSION</u>**

Based on the considerations above, this court affirms Savoy's conviction for being a principal to simple escape and his adjudication as a third felony offender. Nevertheless, Savoy's maximum sentences are excessive. Therefore, Savoy's sentences are vacated, and the matter is remanded to the trial court for re-sentencing.

**SENTENCE VACATED. REMANDED FOR RE-SENTENCING.**

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-1140

STATE OF LOUISIANA

VERSES

COURTNEY PAUL SAVOY

**SAUNDERS, Judge, agrees in part, and dissents in part and assigns written reasons.**

I agree with the majority opinion affirming all aspects of Defendant's conviction. However, I disagree with the majority's decision to vacate Defendant's sentences.

I would affirm the trial judge in all respects. I do not agree that the trial judge exceeded his discretion in rendering sentences of 5 and 10 years respectively. The record before us suggests that Defendant has been guilty of no less than 13 different felony convictions. His versatility is remarkable. He has been convicted of simple burglary, burglary of an inhabited dwelling, forgery, possession of stolen things, bank fraud, illegal possession of firearms and a myriad of other serious crimes.

Heretofore, his crimes have not been of a violent nature. In this case however, he concocted a plan to overpower the guards and effectuate a multiple escape. The trial court was then faced with a man who continued to show contempt for law and order and who has now crossed the line from non-violent to violent felonious conduct. The trial judge is allowed great discretion in these matters. I do not feel that he has exceeded his discretion. Accordingly, I would affirm each sentence and respectfully dissent.