PER CURIAM.
| tThe state charged defendant by bill of information with simple escape from the Winn Correctional Center in January of 2007, in violation of La.R.S. 14:110(A). After trial by jury, defendant was found guilty as charged and sentenced to the maximum term for the offense of five years’ imprisonment at hard labor, to run consecutively to the sentence he was already serving at the time of the escape. At sentencing, the trial court specifically took into account defendant’s rap sheet which revealed 13 prior felony convictions. The court also considered as an aggravating factor that defendant had (in the court’s opinion) lied in his testimony at trial in which he denied any complicity in the escape. On appeal, the Third Circuit reversed defendant’s conviction and sentence on grounds that the trial court improperly precluded the defense from impeaching state witnesses with their prior inconsistent statements. State v. Savoy, 08-1444 (La.App. 3rd Cir.6/3/09), 11 So.3d 1184.
On remand of the case, the state filed an amended bill of information charging defendant with the more serious crime of aggravated escape in violation of La.R.S. 14:110(C)(1). Defendant filed a pro se motion to quash the amended bill on grounds of prosecutorial vindictiveness in the substitution of a more serious charge for the original to punish him for success on appeal. See Blackledge v. Perry, 417 U.S. *1281 21, 28-29, 94 S.Ct. 2098, 2103, 40 L.Ed.2d 628 (1974) (“[I]t was not constitutionally permissible for the State to respond to Perry’s invocation of his statutory right to appeal by bringing a more serious charge against him prior to the trial de novo.”). The state rendered the motion moot by filing a third bill of information recharging defendant with simple escape. After trial by jury in 2010, defendant was again found guilty as charged and the trial court resen-tenced him to five years’ imprisonment at hard labor, again noting his long prior felony record and subscribing to its prior sentencing reasons.
The state thereafter filed an habitual offender bill charging defendant as a third offender on the basis of two sets of prior convictions entered on January 25, 2000, and on January 31, 2005. Defendant filed another pro se motion to quash, alleging selective prosecution and prosecutorial vindictiveness. The trial court denied the motion summarily and after a contradictory hearing, adjudicated defendant a third felony offender. The court sentenced defendant to ten years’ imprisonment at hard labor, the maximum term for a third offender convicted of simple escape, to run consecutively to the sentence he was already serving.
On appeal, the Third Circuit affirmed defendant’s conviction but reversed his sentence as excessive and remanded for resentencing. State v. Savoy, 10-1140 (La.App. 3rd Cir.5/11/11), 64 So.3d 457 (Saunders, J., dissenting). We granted the state’s application for review and for reasons that follow, reverse the decision below and remand the case to the court of appeal for further consideration.
The evidence at trial shows that in January 2007, defendant and another Winn Correctional Center inmate, Jacob Shaw, were transported by van from Winnfield to a hospital in Pineville, Louisiana, for injuries ostensibly suffered in a fall. Both inmates were in wrist cuffs, leg irons, and waist chains. Upon arriving at the hospital, one of the guards opened the door of the prison van and observed |sShaw holding his waist chain in his hands. Shaw bolted past the guard and sprinted for the woods nearby, leaving defendant behind still clad in his leg and hand shackles and waist chain. Despite several shots fired in his direction by one of the guards, Shaw escaped into the woods and eluded capture until the following day.
In an initial statement to Winn Parish authorities following his capture, Shaw claimed that he alone had slipped off his waist chain, undid one of his leg irons, and ran for the woods. However, in a second statement, and at trial, Shaw claimed that defendant had helped him escape by picking the locks on both their leg irons as part of a plan to escape from the Correctional Center by overpowering the guards, seizing their weapons, and locking them in the back of the prison van while they drove away. The plan went awry when Shaw, about to pounce on the guard at the rear door of the van after they arrived at the hospital, looked back and saw defendant still seated in the van and refastening his leg irons. Shaw quickly concluded that his accomplice had “fed [him] to the wolves,” and that it was “suicide” to try to grab the guard’s gun. He headed for the woods instead. Shaw had resolved his own escape charge by way of a guilty plea and a sentence of two years’ imprisonment at hard labor. For his part, although he had given conflicting statements about whether he had played any role in Shaw’s escape, at first denying any complicity and then admitting that he had agreed to assist Shaw in the escape, defendant testified at trial and denied that he had planned any escape, assisted Shaw in escaping, or attempted to escape himself.
*1282 On appeal, the Third Circuit affirmed defendant’s conviction after rejecting several assignments of error, including one raising the sufficiency of the evidence. As to that question, the court of appeal noted that the trial “involved testimony from several witnesses who contradicted themselves at one point or another,” but 14also observed that “the jury could have reasonably found, based on its credibility determinations, that Savoy aided and abetted in Shaw’s escape or directly or indirectly counseled with him to commit simple escape.” Savoy, 10-1140, p. 9, 64 So.3d at 464. As to the sentence, the court of appeal rejected defendant’s pro se argument that his adjudication and sentence as an habitual offender amounted to selective prosecution, especially in light of the unen-hanced two-year term of imprisonment received by Shaw following his guilty plea. Savoy, 10-1140, p. 23, 64 So.3d at 471 (“What the State did or did not decide with regard to Shaw is immaterial to its legal prosecution of Savoy as a habitual offender.”). The court of appeal further noted that in his pro se brief, defendant argued “he was erroneously given a harsher sentence on retrial (five and ten years) without the trial court’s showing of justification for a more severe sentence than was imposed at the first trial (five years).” Id., 10-1140, p. 9, 64 So.3d at 464. The Third Circuit did not address that claim because it found defendant’s sentence excessive in any event, particularly when compared with the two-year term received by Shaw, who had been serving a 20-year sentence for forcible rape at the time of his escape. Given the settled jurisprudential rule that maximum sentences are ordinarily reserved for the most blameworthy offenders committing the most serious violations of the charged offense, see, e.g., State v. Quebedeaux, 424 So.2d 1009, 1014 (La.1982), the court of appeal reasoned that “as one who was imprisoned for the commission of a crime of violence, a sex offense, Shaw received the minimum sentence for his completed escape, while Savoy received the maximum sentence for his role as a principal, enhanced to the maximum extent by the third offender adjudication.” Savoy, 10-1140, p. 12, 64 So.3d at 465. The majority concluded that defendant was “not a ‘worst offender’ on whom a maximum sentence should be imposed,” that “the maximum sentence is, indeed, reserved for more egregious offenders,” | ¿and that defendant’s offense “warrant[ed] a shorter sentence.” Savoy, 10-1140 at 12-13, 64 So.3d at 465. The court of appeal therefore vacated defendant’s sentence and remanded for resentencing without providing any specific direction to the trial court.
Dissenting in part, Judge Saunders agreed with the majority’s decision to affirm defendant’s conviction but disagreed with reversing his sentence, noting that defendant had shown “remarkable versatility” in acquiring 13 convictions for a variety of crimes which displayed continued “contempt for law and order.” Savoy, 10-1140 at 1, 64 So.3d at 472 (Saunders, J., dissenting in part). Further, Judge Saunders noted that while none of defendant’s crimes for which he had been adjudicated a third offender involved violence, defendant had in this instance “concocted a plan to overpower the guards and effectuate a multiple escape,” and had thereby “now crossed the line from non-violent to violent felonious conduct.” Id. Judge Saunders thus found no abuse of the trial court’s broad sentencing discretion.
We agree with Judge Saunders that defendant’s sentence does not implicate La. Const. art. I, § 20’s prohibition against excessive sentences. In determining whether a punishment is grossly disproportionate to the severity of the offense or constitutes nothing more than needless *1283 infliction of pain and suffering, State v. Bonanno, 384 So.2d 355, 357 (La.1980), this Court has repeatedly emphasized that sentence review under the Louisiana constitution does not provide an appellate court with a vehicle for substituting its judgment for that of a trial judge as to what punishment is more appropriate in a given case. State v. Walker, 00-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462; State v. Cook, 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959; State v. Humphrey, 445 So.2d 1155, 1165 (La.1984). In the present case, the court of appeal found that defendant warranted a shorter term of | ¿imprisonment not because it found that the sentence he received was grossly disproportionate to the severity of the offense but because the punishment appeared grossly disproportionate to the sentence imposed on Jacob Shaw, a convicted rapist who actually escaped under circumstances in which at least his life had been threatened when one of the guards opened fire. In fact, while co-defendants convicted of the same crime “need not be sentenced equally, even where the co-defendants come from similar backgrounds and might be similar in other respects, disparity of sentences is ... [a] factor[ ] to be weighed by [an appellate court] in assessing an excessiveness claim.” State v. Smith, 433 So.2d 688, 698 (La.1983).
However, we find no abuse of the trial court’s sentencing discretion in according defendant a “worst offender” status by placing primary weight on his extraordinary prior record by which he appears to have amassed considerably more than just 13 prior felony convictions in two separate proceedings conducted five years apart involving what Judge Saunders accurately characterized as “remarkable versatility” because they included the offenses of simple burglary, simple burglary of an inhabited dwelling, forgery, unauthorized use of an access card, illegal possession of stolen things, bank fraud, and felon in possession of a firearm. As Judge Saunders noted, defendant added to that versatility in the present case by planning an escape which contemplated the use of physical force or violence to overpower the guards and disarm them and, as the state belatedly acknowledged when it briefly charged defendant with the more serious crime of aggravated escape, a 10-year felony offense, had endangered at least the life of Jacob Shaw, who was firmly convinced he had been set up by his accomplice, and threatened public safety generally, when the prison guard opened fire in the hospital parking lot. Defendant’s pri- or lengthy record provided an objective and particularized basis for the trial court to place him in the “worst offender” category. See, e.g.,_jjState v. Harris, 414 So.2d 325, 328-29 (La.1982) (near maximum sentence of four and one-half years for simple escape not excessive given defendant’s lengthy criminal record and disciplinary violations, in addition to his lack of respect and continued defiance of authority); State v. Nunn, 599 So.2d 462, 464-65 (La.App. 2nd Cir.1992) (nine-year sentence not excessive for offender with long history of criminal convictions, escape planned in advance, and posed serious risk to public safety).
Nor do we find any abuse of discretion by the trial court in considering that defendant’s testimony at trial, completely at variance not only with Shaw’s testimony but also with one of the statements he gave the authorities in the course of the investigation, reflected what his lengthy prior record revealed about his potential for rehabilitation. While a trial court may not use its assessment of defendant’s credibility as the sole basis for imposing a relatively harsh sentence, State v. Soco, 441 So.2d 719, 721 (La.1983); Quebedeaux, 424 So.2d at 1014, a court may “tak[e] into *1284 account the defendant’s honesty under oath as a measure, ⅛ light of all other knowledge gained about the defendant ... [of] his prospects for rehabilitation and restoration to a useful place in society.’ ” State v. Salinas, 97-2930, pp. 1-2 (La.9/25/98), 719 So.2d 1035 (quoting United States v. Grayson, 438 U.S. 41, 55, 98 S.Ct. 2610, 2618, 57 L.Ed.2d 582 (1978)).
We conclude that the Third Circuit erred in vacating defendant’s sentence as excessive. However, the enhanced term of 10 years’ imprisonment at hard labor, twice what defendant received before the court adjudicated and sentenced him as a third offender, may implicate Blaclcledge and the Supreme Court’s seminal decision in North Carolina v. Pearce, 395 U.S. 711, 725, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656 (1969), which held that the Due Process Clause of the Fourteenth Amendment “requires that vindictiveness against a defendant for having | ^successfully attacked his first conviction must play no part in the sentence he receives after a new trial.” See also Texas v. McCullough, 475 U.S. 134, 138, 106 S.Ct. 976, 979, 89 L.Ed.2d 104 (1986) (noting that the Pearce rule has undergone refinement over the years according to “the need, under the circumstances, to ‘guard against vindictiveness in the resentencing process.’ ”) (quoting Chaffin v. Stynchcombe, 412 U.S. 17, 25, 93 S.Ct. 1977, 1982, 36 L.Ed.2d 714) (omitting emphasis).
Accordingly, the decision below setting aside defendant’s sentence as excessive is reversed and this case is remanded to the court of appeal for consideration of defendant’s pro se claim pretermitted on original appeal that his resentencing as a habitual offender to a term of imprisonment twice as long as originally imposed does not comport with due process of law.
DECISION OF THE COURT OF APPEAL REVERSED; CASE REMANDED.