STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**17-88**


STATE OF LOUISIANA

VERSUS

PATRICK SETH JONES


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 8397-15
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**SHANNON J. GREMILLION
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Shannon J. Gremillion, and Van H. Kyzar, Judges.


**AFFIRMED.**

**Carey J. Ellis, III**
**Louisiana Appellate Project**
**P O Box 719**
**Rayville, LA 71269**
**(318) 728-2043**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Patrick Seth Jones**

**Patrick Seth Jones**
**Camp C - Wolf 1**
**Louisiana State Prison**
**Angola, LA 70712**
**In Proper Person**

**John Foster DeRosier**
**Fourteenth Judicial District Attorney**
**Karen C. McLellan**
**Assistant District Attorney**
**P. O. Box 3206**
**Lake Charles, LA 70602-3206**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Tara B. Hawkins**
**Attorney at Law**
**P. O. Box 3756**
**Lake Charles, LA 70602**
**(337) 660-2232**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**GREMILLION, Judge.**

On January 19, 2015, two men, one masked and the other unmasked, robbed the Royal Palace Casino and employees and patrons of the casino in Calcasieu Parish. Defendant, Mr. Patrick Seth Jones, appeals his convictions on four counts of armed robbery for being the masked gunman who perpetrated the robberies, as well as his sentences for those crimes. For the reasons that follow, Defendant's convictions and sentences are affirmed.

## FACTS

Mr. Daniel Lavergne entered the Royal Palace Casino on the night of January 19, 2015, and shortly thereafter exited it. He repeated this behavior once again, before entering the casino a third time and walking to the bar, where he ordered a "Crown and Coke" from the assistant manager/cashier/bartender, Ms. Sarah Bushnell. When he was told that he would be charged $6.00 for that drink, Mr. Lavergne declined.

Another individual entered the casino wearing a mask, gloves, dark pants, a red flannel shirt, and a jacket. The security guard, Ms. Clara Williams, told him he must remove the mask to enter. This person struck Ms. Williams in the head, grabbed her by the shirt, and hurled her to the floor. He then began to frisk Ms. Williams, demanding to know where her gun was. By this time, the masked individual had produced a gun himself.

Mr. Lavergne then moved to the doors to act as a lookout while the masked man led Ms. Bushnell to the back. Ms. Bushnell and Ms. Williams opened the casino safe for the masked robber. Mr. Lavergne robbed items from the other casino customers. The two bandits fled in a dark SUV that had been backed into a

handicapped parking space just outside the main entrance. Ms. Bushnell then called police.

Detective Shaun Stewart of the Sulphur Police Department investigated the crime. Detective Stewart obtained the surveillance video from the casino and contacted the Orange, Texas, Police Department. Members of that department identified Mr. Lavergne as the unmasked perpetrator from his distinctive hair style, facial hair, and neck tattoo. According to Detective Stewart, on May 4, 2015, he interviewed Mr. Lavergne, who gave a statement implicating Defendant as the masked gunman.

Additionally, Detective Stewart ascertained that Lavergne and Defendant had been to the L'Auberge du Lac Casino in Lake Charles that same night. Detective Stewart obtained surveillance video from that casino, and observed Lavergne and Defendant departing the casino in a dark SUV such as the one observed by Ms. Williams at the Royal Palace.

Defendant was arrested in Orange, Texas, in a convenience store parking lot. He was driving a dark green Toyota Sequoia SUV.

On March 18, 2015, Defendant was charged by bill of information with four counts of armed robbery, violations of La.R.S. 14:64, and four counts of armed robbery with a firearm, violations of La.R.S. 14:64.3. On May 3, 2016, the State amended the bill to combine the charges and reflect only four counts of armed robbery with a firearm, violations of La.R.S. 14:64 and 14:64.3.

At trial, Mr. Lavergne recanted his identification of Defendant as the masked perpetrator. Mr. Lavergne testified that he was subpoenaed to testify and was not doing so as part of his plea agreement. When asked if another individual was with him when he robbed the casino, Mr. Lavergne replied, "I'd rather not answer that."

2

Mr. Lavergne also denied giving a statement to Detective Stewart. Although Mr. Lavergne stated that the signature on a rights form looked like his signature, he did not recall giving a statement or signing the form. After being shown a transcript of the May 4, 2015, statement he gave to Detective Stewart, Mr. Lavergne denied giving the statement. Mr. Lavergne denied arriving at the L'Auberge du Lac in a green Toyota Sequoia, and denied knowing how Defendant arrived there. Mr. Lavergne testified that he could not recall how he had arrived at the Royal Palace. He further testified that he was picked up from the Royal Palace by a taxi that returned him to Orange, Texas.

Cell phone transcripts were introduced that contained text messages exchanged between Mr. Lavergne and Defendant. These text messages discussed splitting cash between the two men. Mr. Lavergne testified that the money discussed represented Defendant's winnings from playing blackjack at the Isle of Capri Casino. Mr. Lavergne had received $13,000.00 in a personal injury settlement, and he frequently carried substantial sums of cash. Defendant borrowed money from Mr. Lavergne in order to play blackjack and agreed to split his winnings with him.

Defendant testified at trial. He testified that after they left L'Auberge du Lac, he and Mr. Lavergne drove back to Orange, Texas, and he allowed Mr. Lavergne to borrow his Toyota Sequoia. Defendant testified that he had won $7,000.00 at the Isle of Capri, and the text messages between him and Mr. Lavergne concerned the equitable sharing of those winnings. He denied participating in the Royal Palace robbery.

On May 6, 2016, Defendant was found guilty by a unanimous jury of four counts of armed robbery with a firearm. On May 13, 2016, Defendant filed a

Motion for New Trial. The trial court denied the motion for new trial on June 20, 2016, and Defendant waived the time delays for sentencing. On that same date, the trial court imposed the following sentences: 1) Count one – fifty years at hard labor, plus five years for the firearm enhancement; 2) Count two – twenty-five years at hard labor, plus five years for the firearm enhancement; 3) Count three – twenty years at hard labor, plus five years for the firearm enhancement; and 4) Count four – fifty years at hard labor, plus five years for the firearm enhancement. All sentences were ordered to run consecutively, for a total sentence of 165 years.

On June 29, 2016, Defendant filed a Motion for Appeal, which was granted on July 26, 2016. Now before the court is a brief filed by Defendant alleging an assignment of error as to the sufficiency of the evidence and an assignment of error as to the excessiveness of the sentences.

## ANALYSIS

### *Error patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by staff for errors patent on the face of the record. After reviewing the record, we find that there are no errors patent; however, the sentencing minutes and the commitment order require correction.

After imposing Defendant's sentences and providing him information regarding diminution of sentence, enhancement, and a prospective release date, the trial court stated, "Based on the statutes, he's not eligible for parole." There are two statutes at issue in this case, La.R.S. 14:64 and 14:64.3, both of which require the sentence imposed to be without benefit of parole, probation, or suspension of sentence. Neither the sentencing minutes nor the commitment order reflect that Defendant's sentences are to be served without the benefit of parole, probation, or

suspension of sentence. "[W]hen the minutes and the transcript conflict, the transcript prevails." *State v. Wommack*, 00-137, p. 4 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, 369, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62. Accordingly, the trial court is ordered to correct the sentencing minutes and the commitment order to reflect that all of Defendant's sentences are to be served without the benefit of parole, probation, or suspension of sentence. *See State v. Clayton*, 10-1303 (La.App. 3 Cir. 5/4/11), 64 So.3d 418, *writ denied*, 11-1015 (La. 11/4/11), 75 So.3d 923.

***Assignment or error number 1 (sufficiency of the evidence).***

When the key issue is the defendant's identity as the perpetrator, the standard by which the sufficiency of the evidence should be reviewed has been noted by this court:

> As to the defendant's assertions that the State failed to prove beyond a reasonable doubt that he killed White, the supreme court in *State v. Hughes*, 05-992, pp. 5-6 (La. 11/29/06), 943 So.2d 1047, 1051, held:
>
> > [W]hen the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. *State v. Weary*, 03-3067 (La.4/24/06), 931 So.2d 297; *State v. Neal*, 00-0674 (La.6/29/01), 796 So.2d 649. Positive identification by only one witness is sufficient to support a conviction. *Weary*, 03–3067 at p. 18, 931 So.2d at 311; *Neal*, 00–0674 at p. 11, 796 So.2d at 658; *State v. Mussall*, 523 So.2d 1305, 1311 (La.1988). It is the factfinder who weighs the respective credibilities of the witnesses, and this court will generally not second-guess those determinations. *State v. Bright*, 98-0398, p. 22 (La.4/11/00), 776 So.2d 1134, 1147.

*State v. McCoy*, 16-948, p. 2 (La.App. 3 Cir. 5/10/17), 219 So.3d 538, 541.

Although Mr. Lavergne identified Defendant as one of the robbers in his statement to Detective Stewart, Mr. Lavergne denied making that statement when

5

he testified at trial. Recently, this court addressed a case in which a key witness recanted her initial identification of the defendant as the perpetrator in *State v. Fontenot*, 16-226 (La.App. 3 Cir. 11/2/16), 207 So.3d 589. After noting that La.Code Evid. art. 801(D)(1)(a) permits a prior inconsistent statement made by a witness to be used as substantive evidence of guilt when the prior inconsistent statement is corroborated, this court stated:

> In the present case, the jury not only heard the evidence that corroborated Sara's initial statement to police identifying the Defendant as the perpetrator, but the jury also heard evidence that discredited Sara's recantation at trial. At trial, Sara testified that she waited until the Defendant was out of rehab to tell police he was not the person who stole the truck. On cross-examination, however, she admitted that she waited until after she and the Defendant were married, shortly before trial, to recant her statement to police. We find that this discredits her claim that she framed the Defendant only to force him into rehab and bolsters the State's theory that she changed her story for the purpose of keeping her husband out of jail. The jury heard the evidence as to Sara's "scheme" and was able to make a credibility determination. Additionally, Sara testified she stole the truck, and the truck had a standard transmission. The owner of the truck, however, testified the truck had an automatic transmission. Based on the foregoing, we find that the evidence was sufficient for a reasonable juror to find that the Defendant was the perpetrator.

*Id.* at 601.

As in *Fontenot*, the jury in the present case heard evidence that corroborated Mr. Lavergne's May 4, 2015, statement to police identifying Defendant as one of the perpetrators: Defendant possessed an SUV that matched the description of the SUV seen at the Royal Palace Casino at the time of the robbery; Mr. Lavergne and Defendant both admitted that they drove to L'Auberge the night of the robbery in Defendant's green Toyota Sequoia; Mr. Lavergne testified about text messages concerning the split of money between him and Defendant the morning after the robbery; Detective Stewart testified about video footage showing Mr. Lavergne and Defendant going into and leaving L'Auberge about an hour before the robbery;

6

both Detective Stewart and Ms. Bushnell testified that the masked robber appeared to be wearing layers of clothing; and Detective Stewart testified the pants worn by Defendant in surveillance video obtained from the L'Auberge du Lac were similar to the pants worn under the sweatpants of the masked robber.

The jury also heard evidence that discredited Mr. Lavergne's recantation at trial. Mr. Lavergne denied giving the statement at all, even though Detective Stewart testified that Mr. Lavergne gave the statement, and the jury watched a video of the statement. The jury was also able to evaluate Mr. Lavergne's explanation that he may have wanted to retaliate against Defendant for Defendant's accusation against him in another matter. The jury heard all of the evidence and was able to make a credibility determination. Based on the reasonableness of the jury's credibility determination along with the other corroborating evidence, we find that the evidence was sufficient for a reasonable jury to find beyond a reasonable doubt that Defendant was the perpetrator.

For the foregoing reasons, this assignment lacks merit.

### Assignment of error number 2 (excessiveness of sentence)

The penalty range for an armed robbery conviction is between ten and ninety-nine years at hard labor without benefit of parole, probation, or suspension of sentence. La.R.S. 14:64. Additionally, "[w]hen the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence." La.R.S. 14:64.3. This enhancement of sentence is to be served consecutive to the sentence imposed under La.R.S. 14:64. *Id.* Defendant was convicted of four counts of armed robbery with a firearm; therefore, he faced a potential sentence, including the enhancement under

7

La.R.S. 14:64.3, of 416 years at hard labor without benefit of parole, probation, or suspension of sentence.

Defendant neither objected to the sentence nor did he file a motion to reconsider the sentence. Pursuant to La.Code Crim.P. art. 881.1, his claim of excessiveness of sentence is barred. This court has on many occasions, however, considered bare claims of excessiveness, and we do so here.

In *State v. Whatley*, 03-1275, pp. 5-6 (La.App. 3 Cir. 3/3/04), 867 So.2d 955, 958, the standard of review for bare claims of excessiveness of sentence was stated as follows:

> The Eighth Amendment to the United States Constitution and La. Const. art. I, § 20 prohibit the imposition of cruel or excessive punishment. " '[T]he excessiveness of a sentence becomes a question of law reviewable under the appellate jurisdiction of this court.' " *State v. Dorthey*, 623 So.2d 1276, 1280 (La.1993) (quoting *State v. Sepulvado*, 367 So.2d 762, 764 (La.1979)). Still, the trial court is given wide discretion in imposing a sentence, and, absent a manifest abuse of that discretion, we will not deem as excessive a sentence imposed within statutory limits. *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. However, "[m]aximum sentences are reserved for the most serious violations and the worst offenders." *State v. Farhood*, 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225. The only relevant question for us to consider on review is not whether another sentence would be more appropriate, but whether the trial court abused its broad discretion in sentencing a defendant. *State v. Cook*, 95-2784 (La.5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Even when a sentence falls within the statutory sentencing range, it still may be unconstitutionally excessive. In determining whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals, this court has suggested that several factors may be considered:

> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar

8

crimes. *State v. Smith,* 99-0606 (La.7/6/00); 766 So.2d 501.While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061.

The trial court initially noted that Defendant was a twenty-three-year-old male with some college education who worked as a plant laborer. The court also noted that it had received letters from Defendant's family members asking for leniency. Two victims, Ms. Williams and Ms. Bushnell, further gave statements at the sentencing hearing. The State sought a minimum sentence of twenty years on each count to be served consecutively plus the five-year firearm enhancement on each count. The State noted that Defendant had a prior felony conviction for burglary of a building in Texas, the impact of Defendant's behavior on the victims, the Defendant's use of a firearm, the disingenuous testimony of Defendant at trial, and Defendant's lack of remorse.

On behalf of Defendant, defense counsel argued the following:

Your Honor, I certainly agree with Ms. Hawkins that armed robbery is one of the most serious crimes there are [sic] and I certainly have sympathy for the two ladies who spoke this morning. I know it would be a horrible thing for them to have to endure.

Mr. -- first of all, Mr. Jones exercised his right to a trial, a trial by jury. And, yet, he is being called disingenuous by testifying in his own behalf, also that he allegedly does not accept responsibility for his actions. He consistently has stated that he wasn't present. And, I was not there. I can't say whether he was present or not. But, I do know that there have been cases where juries have improperly convicted persons based on a lot of -- a lot of evidence to the contrary.

9

But, that being what it may, he has been convicted by a jury, and he has been convicted of some very serious offenses. The Court has had the opportunity to read the letters. I read them. They were very uh -- really disturbing letters about a particular instance in Mr. Jones' background which was the suicide of his father when he was a young teenager in his presence and how Mr. Jones' behavior changed substantially after that.

One of the letters even pointed out that, even though, if we for the sake of argument state that it was Mr. Jones who committed the offense, even though he did that, the -- this second individual did do some heinous things, when the victim said, "Oh, I need my money. That's my car note" he returned the purse, returned the wallet, and returned the money.

He is very young. His prior offense was a non-violent offense. He is ascribed to circumstances as to -- as to the burglary, that it was a burglary of a school building. There were no individual -- well, there was no one who was physically affected, although it was certainly a crime against property.

I would argue that any sentence that the Court issues should be concurrent. All of these matters happened at the same time in the same course of events as is set forth in the Code of Criminal Procedure, and we would request as minimum of a sentence as possible, and that they be concurrent, all counts be concurrent.

The trial court considered the factors listed in La.Code Crim.P. art. 894.1, noting Defendant's status as a second felony offender, noting that the offenses involved crimes of violence, and noting deliberate cruelty to Ms. Williams, an elderly woman, and Ms. Bushnell, a petite female:

The offender used threats or actual violence in the commission, specifically as to Victim 1, Ms. Williams, and Victim 4, Ms. Bushnell. Those numbers are arbitrarily set by the Court when I just wrote down the names of the individuals.

Again, a lesser degree to Victim 2 who was pushed to the ground when he attempted to try and leave the premises. Specifically, Ms. Williams was struck, and Ms. Bushnell was dragged around the facility in an effort to locate the funds.

10

The trial court noted the economic loss suffered by the victims, as well as the emotional trauma they suffered. After noting Defendant used a dangerous weapon and noting his prior felony, the trial court stated:

> He was the leader of this violation in concert with one or more persons with respect to whom he occupied a position as organizer, supervisor position, or a position of management? The Court basically had the opinion in reviewing this that he controlled the robbery. It appeared that based on Mr. -- what was seen, Mr. Lavergne was sent in without any cover on a number of occasions until it appeared that it was something the parties decided to do, and then Mr. Jones became involved. And, you could tell from the video that he was calling pretty much the shots during the course of the robbery. So, I do find that he was the primary organizer.
>
> . . . .
>
> Other aggravating circumstances have to do with the aggression that was noted on the video, as well as verified by the testimony of the victims. Also, it's noted that the defendant testified. And, the content based on the Court's evaluation was one of anger with regard to going through the trial. At no time has the defendant ever acknowledged he was involved in the robbery, nor has he indicated any remorse or responsibility.

As for mitigating factors, the trial court noted Defendant's close family ties and that Defendant returned money to Ms. Bushnell when she pleaded for him to do so. After the trial court imposed the sentences, it noted that Defendant appeared to have a lot of pent-up anger and that Defendant was a danger to society.

The sentences imposed are within the mid-range of those Defendant faced. The imposition of those sentences to be served consecutively represents the only issue that might render them excessive.

In *State v. Thomas*, 98-1144, pp. 1-2 (La. 10/9/98), 719 So.2d 49, 49-50, the supreme court stated the following regarding the imposition of consecutive sentences for crimes committed as part of a single transaction:

> Although Louisiana law favors concurrent sentences for crimes committed as part of a single transaction, La.C.Cr.P. art. 883; *State v.*

11

*Underwood,* 353 So.2d 1013, 1019 (La.1977), a trial judge retains discretion to impose consecutive penalties on the basis of other factors, including the offender's past criminality, violence in the charged crimes, or the risk he or she poses to the general safety of the community. *State v. Williams,* 445 So.2d 1171, 1182 (La.1984); *State v. Jacobs,* 371 So.2d 727, 732-33 (La.1979) (on reh'g). . . .On appellate review of sentence, the relevant question is " 'whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.' " *State v. Cook,* 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959 (quoting *State v. Humphrey,* 445 So.2d 1155, 1165 (La.1984)), cert. denied, [519] U.S. [1043], 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). In this context, a trial court "abuses its sentencing discretion *only* when it contravenes the prohibition of excessive punishment in La. Const. art. I, § 20, i.e., when it imposes 'punishment disproportionate to the offense." ' *State v. Soraparu,* 97-1027 (La.10/13/97), 703 So.2d 608 (quoting *State v*[.] *Sepulvado,* 367 So.2d 762, 767 (La.1979)) (emphasis added). Even granting the consecutive nature of the penalties imposed on all three counts, the defendant's total sentence remains within the 35 to 50 year range this Court has found acceptable for first offenders convicted of armed robbery. *See, e.g., State v. Nealy,* 450 So.2d 634, 640 (La.1984); *State v. Walker,* 449 So.2d 474 (La.1984); *State v. Dunns,* 441 So.2d 745, 746 (La.1983); *State v. Huntsberry,* 439 So.2d 432, 433 (La.1983).

Our colleagues on the Second Circuit Court of Appeal have identified several factors that should be considered by a trial court in imposing consecutive sentences for armed robbery: the defendant's criminal history, the danger represented by the offense, the viciousness of the crime, the harm to the victims, whether the defendant poses an unusual risk to the public, the defendant's potential for rehabilitation, and whether the defendant benefited from a plea bargain. *State v. Coleman*, 32,906, (La.App. 2 Cir. 4/5/00), 756 So.2d 1218, *writ denied,* 00-1572 (La. 3/23/01), 787 So.2d 1010. In its reasons for the sentences imposed, the trial court articulated many of the factors set forth in *Coleman*: Defendant's status as a second felony offender, Defendant's deliberate cruelty to two of the victims, Defendant's position as leader of the robbery, Defendant's lack of remorse, Defendant's failure to accept responsibility, Defendant's pent-up anger, and

Defendant's danger to society. Thus, the record supports the trial court's imposition of consecutive sentences. The Louisiana Supreme Court has often noted "that sentence review under the Louisiana constitution does not provide an appellate court with a vehicle for substituting its judgment for that of a trial judge as to what punishment is more appropriate in a given case." *State v. Savoy*, 11-1174, p. 5 (La. 7/2/12), 93 So.3d 1279, 1283 (citing *State v. Walker*, 00-3200 (La. 10/12/01), 799 So.2d 461; *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996); and *State v. Humphrey*, 445 So.2d 1155 (La.1984)).

## DECREE

For the foregoing reasons, the convictions and sentences of Defendant, Patrick Seth Jones, are affirmed. The trial court is ordered to correct the court sentencing minutes and the commitment order to reflect that all of Defendant's sentences are to be served without the benefit of parole, probation, or suspension of sentence.

**AFFIRMED.**